**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SYLVESTER D. KIMBLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. CIV-25-220-JD |
| | ) |
| JIM FARRIS, et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Sylvester D. Kimble, a state prisoner proceeding pro se, filed a Complaint under 42 U.S.C. § 1983 alleging civil rights violations while incarcerated at the Lawton Correctional and Rehabilitation Facility ("LCRF") in Lawton, Oklahoma. Doc. 1. United States District Judge Jodi W. Dishman referred this matter to the undersigned Magistgrate Judge in accordance with 28 U.S.C. §§ 636(b)(1)(B)-(C). Doc. 5. Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion"). Doc. 34. Plaintiff responded to the Motion, Doc. 35, and Defendants filed a reply, Doc. 38. For the reasons set forth below, the undersigned recommends that the Court treat Defendants' Motion as a motion for summary judgment and grant summary judgment to all Defendants.

## I.    Plaintiff's Claims

Plaintiff raises two claims in his Complaint, alleging constitutional violations against LCRF officials and the GEO Group, Inc. ("GEO Group"), a private entity that

contracted with the Oklahoma Department of Corrections ("ODOC") to operate LCRF.[1]

In his first claim, Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights arising from what he characterizes as a false accusation against him that he threatened Defendant Carrasco on November 13, 2024. Doc. 1 at 9; Doc. 1-1 at 1. According to Plaintiff, Defendant Carrasco lied, and Plaintiff "was force[d] to plea[d] guilty to a[] Class A offense [of] Disrespect to Staff." Doc. 1-1 at 1. With his claim, Plaintiff alleges cruel and unusual punishment, retaliation, conspiracy, discrimination, and abuse of power against several LCRF officials. *Id*. at 1-2. He attaches to his Complaint copies of an offense report, disciplinary disposition reports, requests to staff, and grievance-related forms related to his first claim. Docs. 1-2 to 1-10.

With his second claim, Plaintiff alleges GEO Group and LCRF officials violated his First Amendment rights and engaged in "religious discrimination" when they did not provide sufficient food to him with his Kosher diet. Doc. 1 at 10-11; Doc. 1-11. The undersigned liberally construes Plaintiff's claim to challenge the volume and caloric content of Kosher meals that prison officials served to Plaintiff while in LCRF's restricted

---

[1] At all times relevant to Plaintiff's allegations, GEO Group owned and operated LCRF. GEO Group later sold LCRF to the State of Oklahoma. Doc. 33 at 1. The sale was finalized on or about July 25, 2025. *Id*. LCRF was later renamed the Red Rock Correctional Center, and the facility was recently renamed again as the Chief James Smith Correctional Center. *See* Oklahoma Department of Corrections, "Lawton prison officially renamed as Chief James Smith Correctional Center," *at* https://oklahoma.gov/doc/newsroom/2026/lawton-prison-officially-renamed-as-chief-james-smith-correction.html (last visited July 31, 2026).

Plaintiff was transferred from LCRF to the Oklahoma State Penitentiary in March 2025. Doc. 13 at 1; Doc. 39 at 1.

housing unit ("RHU").  *See* Doc. 1-11 (alleging "since Inmate Kimble [has] been in RHU the Kosher meals are becoming <u>less food</u>" and the daily meals are "nowhere near 2,400 calories") (citation modified).  For the second claim, Plaintiff also attaches to his Complaint copies of a request to staff and grievance-related forms.  Doc. 1-12.

Plaintiff brings this suit against multiple Defendants:

- Jim Farris, Warden of LCRF;

- GEO Group; and

- several other LCRF employees:

  o    Christine Topping, Facility Head;

  o    James Houston, Unit Manager;

  o    Brittany Hatfield, Case Manager;

  o    Bonnie Green, Chief Classification official;

  o    J. Carrasco, Case Manager;

  o    Lorena McBroom, Case Manager;

  o    Ms. Rainey, PREA Case Manager; and

  o    Pat LNU, Kitchen Supervisor.

Doc. 1 at 5-7.  Plaintiff sues the individual Defendants in both their official and individual capacities.  *Id*.  He seeks monetary damages or, alternatively, his "freedom."  *Id*. at 10-11.

After initial review of the Complaint, the Court ordered prison officials at LCRF to file a Special Report (also known as a *Martinez* report) and ordered Defendants to file an answer or dispositive motion.  Doc. 17 at 1-2.  GEO Group, as the former owner and operator of LCRF, filed a Special Report.  Doc. 33.  Defendant Pat LNU was not served.  *See* Doc. 22 (indicating summons was returned unexecuted).  Defendants GEO Group,

3

Farris, Topping, Houston, McBroom, Hatfield, Julia Carrasco (named in the Complaint as "J. Carrasco"), Green, and Leslie Railey (named in the Complaint as "Ms. Rainey") filed the Motion that is now fully briefed and before the Court.  Doc. 34.

## II.    Treatment of Defendants' Motion as a Motion to Dismiss

Defendants assert two propositions in their Motion.  First, they argue Plaintiff "fails to state facts sufficient to constitute a cause of action" against Defendants GEO Group, Farris, and Topping.  Doc. 34 at 5.  Second, Defendants contend Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  *Id.* at 5-7.  Defendants rely on documents outside the Complaint to support their motion.  To support Defendants' exhaustion argument, they refer to ODOC's grievance procedures and Plaintiff's grievance history, which are included in the Special Report.  *Id.*; Doc. 33.  The Special Report includes a sworn verification from GEO Group's counsel.  Doc. 33 at 9.

The undersigned recommends that the Court treat the Motion as one for summary judgment.  "A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court.'"  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(d)).  Generally, before converting a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment, a court must provide parties with notice of the conversion "to prevent unfair surprise."  *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n.2 (10th Cir. 1996).

Here, there is no unfair surprise.  Defendants moved in their Motion for summary judgment as an alternative to dismissal under Rule 12(b)(6), so Plaintiff had notice from

the Motion itself that procedurally he must defend against summary judgment.  *See Whitmore v. Hill*, 456 F. App'x 735, 737 (10th Cir. 2012) (upholding a district court's conversion of defendants' motion to dismiss into a motion for summary judgment after finding the pro se prisoner "was on notice that, procedurally, he had to defend against summary judgment").  Further, the Court provided adequate notice in its Order Requiring Service and Special Report, where it notified (1) the parties of the potential for conversion of a motion to dismiss to one for summary judgment and (2) Plaintiff that, "should this occur," he must "respond to the motion and present to the Court all relevant evidence or materials."  Doc. 17 at 3-4 (citation modified); *see also id.* at 4 n.3 (explaining Plaintiff's responsibility to submit evidence "showing that there is a genuine issue of material fact to be litigated at trial").

Defendants' Motion raises failure to exhaust as an affirmative defense, and it relies on documents and a verified summary of Plaintiff's grievance history from the Special Report.  Plaintiff had notice that he had to defend against summary judgment from the styling of Defendants' Motion and the Court's Order Requiring Service and Special Report. The Court should treat Defendants' Motion as one for summary judgment.

## III.    <u>Standard of Review</u>

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986) (citation modified).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020) (citation modified).  "A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Id.* (citation modified).  When applying these standards, the Court "views the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party."  *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (citation modified).

"Failure to exhaust is an affirmative defense under the PLRA."  *Jones v. Bock*, 549 U.S. 199, 216 (2007) (citation modified); *see also Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (holding "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant").  "When a defendant moves for summary judgment based on an affirmative defense, Rule 56 puts the burden on the defendant to demonstrate that no disputed material fact exists regarding the affirmative defense asserted."  *Estrada v. Smart*, 107 F.4th 1254, 1261 (10th Cir. 2024) (citation modified); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (explaining that a party moving for summary judgment bears "the initial responsibility" of showing "the absence of a genuine issue of material fact").

"If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact" by "offering evidence, not bare allegations."  *Estrada*, 107 F.4th at 1261-62 (citation modified).  The plaintiff must "set forth specific facts that would be admissible in evidence" and "identified by reference to

6

affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citation modified); *see also* Fed. R. Civ. P. 56(c)(1)(A) (setting forth how a party introduces summary judgment evidence through, for example, depositions, documents, affidavits or declarations, stipulations, or other materials). If a plaintiff cannot "make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Estrada*, 107 F.4th at 1261 (citation modified).

In a case like this, where Plaintiff is a pro se prisoner, a Court-authorized Special Report (or *Martinez* Report) prepared by GEO Group may aid the Court in determining any bases for relief. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). The Court may treat the Special Report as an affidavit in support of a motion for summary judgment, but it may not accept the factual findings of the prison report if Plaintiff presents conflicting evidence. *Id*. at 1111. Plaintiff's "complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." *Id*. Here, Plaintiff declared under penalty of perjury the truth of his Complaint, to which he attached several grievance-related documents. Doc. 1 at 11; Docs. 1-4, 1-7, 1-8, 1-9, 1-12.

## IV.    **Plaintiff Did Not Exhaust Administrative Remedies**

### A.    **Exhaustion requirements of the Prison Litigation Reform Act of 1995**

The PLRA requires "inmates complaining about prison conditions [to] exhaust prison grievance remedies before initiating a lawsuit." *Jones*, 549 U.S. at 204. The PLRA's exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "Exhaustion under the PLRA is 'mandatory' and 'unexhausted claims cannot be brought in court.'" *Estrada*, 107 F.4th at 1259 (quoting *Jones*, 549 U.S. at 211). "Exhaustion requirements" under the PLRA "give the agency a fair and full opportunity to adjudicate the claims" of a plaintiff before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citation modified).

To exhaust administrative remedies, a prisoner must "properly follow all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citation modified); *accord Woodford*, 548 U.S. at 90-91. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "Substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (citation modified). The PLRA, however, only requires the exhaustion of "available" remedies. 42 U.S.C. § 1997e(a). Therefore, "if an administrative remedy is not available, then an inmate cannot be required to exhaust it." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). A plaintiff has the burden "to show that remedies were unavailable to him." *Id.* at 1254.

### B.   ODOC's four-step grievance process

For the period relevant to Plaintiff's allegations, LCRF used ODOC's "Inmate/Offender Grievance Process" set out in OP-090124.  Doc. 33-2 (Inmate/Offender

8

Grievance Process).  These inmate grievance procedures govern prisoner complaints about prison conditions and provide a four-step exhaustion process for a prisoner to complete before filing suit.  *Id*.; Doc. 33 at 4; Doc. 34 at 5-7; *see generally Little*, 607 F.3d at 1249 (describing ODOC's "four-step process for administrative exhaustion of prisoner claims"). First, a prisoner must try to resolve informally his complaint by talking to the appropriate staff member.  Doc. 33-2, § V.  Second, if not resolved informally, the prisoner must submit a Request to Staff ("RTS") to the appropriate staff member.  *Id.*, § V.A.   Third, if the complaint is still not resolved, a prisoner may file a formal grievance to the reviewing authority, *id.*, § VI.A, which is usually the warden of the prison, *Little*, 607 F.3d at 1249.[2] Fourth, if a grievance response from the reviewing authority does not resolve the issue, the prisoner "may make a final appeal" to the administrative review authority ("ARA"). Doc. 33-2, § VIII.B.  The ruling from the relevant "ARA is final and will conclude the internal administrative process available to the inmate/offender within the jurisdiction of ODOC."  *Id.*, § VIII.D.1.

### C.    Evidence related to Plaintiff's ODOC grievance history

Defendants argue Plaintiff did not exhaust his administrative remedies.  Doc. 34 at 3-7; *see also* Doc. 33 at 4-7.  Defendants' Motion, GEO Group's Special Report, and Plaintiff's grievance-related materials attached to his Complaint and response together provide the following information regarding his grievance history related to his allegations.

---

[2] There is an alternative procedure for complaints related to medical issues that is not relevant here.  Doc. 33-2, §§ VI.A.1.g, VIII.B.

### 1.    RTS – November 24, 2024 (RTS 958)

On November 24, 2024, Plaintiff submitted an RTS to LCRF staff asking why he was in RHU for a "write up" to which he had pleaded guilty.  Doc. 1-8 (RTS 958).  A staff member responded that Plaintiff was in RHU for "being disrespectful to staff."  *Id*.  Plaintiff has provided no evidence that he continued the grievance process for RTS 958.

### 2.    RTS – November 26, 2024 (RTS 1020, Grievance 928-24, Appeal LCF 24-928)

On November 26, 2024, Plaintiff submitted an RTS again asking why he was in RHU.  Doc. 1-4 (RTS 1020).  An LCRF staff member advised him: "Sir you are in RHU because of the disrespect of staff."  *Id*.  On December 5, 2024, Plaintiff filed a grievance related to his placement in RHU.  Doc. 33-7 at 1 (Grievance 928-24).  The record is not clear on whether an LCRF official responded to Grievance 928-24.

Plaintiff later submitted an appeal to the ARA related to Grievance 928-24.  On February 4, 2025, the ARA returned Grievance 928-24 to Plaintiff and pointed out three deficiencies in the grievance: (1) more than one issue or the complaint and/or relief are not consistent on the RTS and grievance, (2) requests for disciplinary action against staff or monetary compensation will not be addressed in the grievance process, and (3) he had failed to follow previous instructions from the reviewing authority or ARA and was advised "DO NOT RESUBMIT."  Doc. 33-7 at 2 (Appeal LCF 24-928).  Plaintiff received the ARA response on February 7, 2025.  *Id*.  He has provided no evidence that he continued the grievance process for RTS 1020, Grievance 928-24, or Appeal LCF 24-928.  Nor has

he provided evidence otherwise that he properly completed the grievance process related to his allegations about time in RHU or retaliation by LCRF staff members.

### 3. RTS – December 5, 2024 (RTS 291, Grievance 912-24, Appeal LCF 24-912)

On December 5, 2024, Plaintiff submitted an RTS asking why Defendant Green was at his disciplinary hearing and complaining about the status of his prison "PACKET." Doc. 1-7 at 3 (RTS 291); Doc. 33-8 at 1 (same).  An LCRF staff member replied on December 10, 2024, advising Plaintiff that his "misconduct has not been posted" and "disrespect will not be tolerated."  Doc. 1-7 at 3; Doc. 33-8 at 1.  On December 16, 2024, Plaintiff filed a grievance related to RTS 291.  Doc. 33-8 at 2 (Grievance 912-24).  On January 30, 2025, the LCRF Grievance Coordinator returned Grievance 912-24 to Plaintiff, explaining the relief sought in the RTS and grievance was not consistent, and he had ten calendar days to resubmit.  Doc. 33-8 at 3; Doc. 35-5.  The Grievance Coordinator also advised that Plaintiff signed his "maximum-security packet" on January 13, 2025, and LCRF does not "control how fast ODOC will transfer [him] to another facility."  Doc. 33-8 at 3; Doc. 35-5.

Plaintiff submitted an appeal to the ARA about Grievance 912-24.  On February 12, 2025, the ARA returned Grievance 912-24 to Plaintiff and advised that it was filed improperly with attachments and provided him with "ONE FINAL opportunity to properly resubmit your corrected grievance/appeal" within 10 days of receiving the ARA form. Doc. 33-8 at 4 (Appeal LCF 24-912).  Plaintiff received the ARA response on February 19,

2025. *Id*. He has provided no evidence that he continued the grievance process for RTS 291, Grievance 912-24, or Appeal LCF 24-912.

### 4. RTS – January 15, 2025 (RTS 756)

On January 15, 2025, Plaintiff submitted an RTS and asked why LCRF staff had included certain 2023 misconduct in his "TRANSFER PACKET." Doc. 1-9 (RTS 756). On January 29, 2025, LCRF staff responded that they "don't see where there's a misconduct for 3.13.23." *Id*. Plaintiff has provided no evidence that he continued the grievance process for RTS 756.

### 5. RTS – December 30, 2024 (RTS 1551, Grievance 12-25, Appeal LCF 25-12)

On December 30, 2024, Plaintiff filed an RTS alleging LCRF staff was "disrespecting [his] religion" by serving cold meals and not providing 2,400 calories to him with a Kosher diet. Doc. 1-12 at 4 (RTS 1551); Doc. 33-9 at 1 (same). On December 31, 2024, a kitchen staff member with LCRF advised Plaintiff the kitchen is "required to follow the menu provided from GEO" and kitchen staff members "have addressed the heating issue and will get that corrected." Doc. 1-12 at 4; Doc. 33-9 at 1.

On January 5, 2025, Plaintiff filed a grievance related to the caloric intake and temperature of meals served to him. Doc. 1-12 at 3 (Grievance 12-25); Doc. 33-9 at 2 (same). On January 22, 2025, the LCRF Grievance Coordinator returned Grievance 12-25 to Plaintiff and advised the grievance was unanswered because it covered more than one issue and the relief sought in the RTS and grievance was not consistent. Doc. 1-12 at 1; Doc. 33-9 at 3. The Grievance Coordinator notified Plaintiff that he had "one opportunity

to re-submit the corrected grievance within ten calendar days of receipt of this notice."

Doc. 33-9 at 3.[3]  Plaintiff received the notice on January 29, 2025.  *Id.*

Plaintiff then submitted an appeal to the ARA related to Grievance 12-25.  On February 24, 2025, the ARA advised Plaintiff that his appeal was filed improperly because (1) more than one issue or the complaint and relief requested are not consistent, (2) he had failed to follow previous instructions for filing the grievance/appeal, and (3) the grievance is unanswerable as there are no timeframes.  Doc. 33-9 at 4 (Appeal LCF 25-12).  Plaintiff received the ARA notice on March 12, 2025.  *Id.*  He has provided no evidence that he continued the grievance process for RTS 1551, Grievance 12-25, or Appeal LCF 25-12.  Nor has Plaintiff provided evidence otherwise that he properly completed the grievance process related to his allegations about volume and caloric contents of meals with a Kosher diet at LCRF.

D.    **Summary judgment based on Plaintiff's failure to exhaust ODOC's grievance process**

To exhaust fully the administrative remedies under ODOC's grievance process, a prisoner must properly proceed through all steps of the process, including making a final appeal to the appropriate ARA.  Defendants here met their "initial burden," *Estrada*, 107

---

[3] The copy of the Grievance Coordinator's response attached to Plaintiff's Complaint is slightly different than the response included in the Special Report.  *Compare* Doc. 1-12 at 1 (without Plaintiff's signature or an indication that he may re-submit a corrected grievance), *with* Doc. 33-9 at 3 (with Plaintiff's signature and an indication that he may re-submit a corrected grievance).  Plaintiff, though, does not dispute he was advised of an opportunity to re-submit his grievance, as he acknowledges in his reply the Grievance Coordinator's response from the Special Report.  Doc. 35-4 at 1 (with Plaintiff's signature and an indication that he may re-submit a corrected grievance).

F.4th at 1261 (citation modified), of the affirmative defense of failure to exhaust by providing evidence that Plaintiff failed to exhaust ODOC's grievance process for his claims. The record evidence shows the ARA received three improperly filed appeals: Appeal LCF 24-928, Appeal LCF 24-912, and Appeal LCF 25-12. Doc. 33-7 at 2; Doc. 33-8 at 4; Doc. 33-9 at 4. No evidence in the record indicates Plaintiff filed a proper appeal to the ARA and received a final answer on his claims alleged in the Complaint.

The burden then shifts to Plaintiff to show "the existence of a disputed material fact" about his grievance attempts. *Estrada*, 107 F.4th at 1261 (citation modified). Or if Plaintiff contends prison officials hindered his ability to file a grievance, "the onus falls on [him] to show that remedies were unavailable to him." *Tuckel*, 660 F.3d at 1254.

In Plaintiff's response to the Motion, he contends that a grievance does not "have to be perfect" and acknowledges that his "grievance wasn't perfect." Doc. 35 at 2. Plaintiff further maintains that he indeed exhausted his administrative remedies, but he provides no evidence that he properly appealed any grievance to the ARA and that his grievance was denied. To support his claim that he exhausted remedies, Plaintiff responds that he "decided to file [a] lawsuit" because he did not get any response from LCRF within 30 days. *Id*. Plaintiff is not clear as to which claim he asserts LCRF did not timely respond. In any event, Plaintiff cites an "Instructions and Use for Grievance Process" summary that explains if "NO RESPONSE IN THIRTY DAYS, BUT NO LATER THAN SIXTY DAYS OFFENDER MAY GRIEVE." Doc. 35-2 at 1. This instruction relates to an inmate's third step in ODOC's grievance process: to file a grievance if he has not gotten a timely response to an RTS. *See* Doc 33-2, § V.A.1.b.7 (explaining that "if there has been no response in

14

30 days, but no later than 60 days, of submission" of the RTS, the inmate "may file a grievance to the reviewing authority" with a copy of the RTS attached (citation modified)). As such, the instruction advises Plaintiff to file a grievance (not a lawsuit). Plaintiff also has not shown that ODOC's administrative remedies were unavailable to him.

Therefore, the undisputed facts establish Plaintiff did not exhaust ODOC's grievance process before filing his Complaint. *See* Fed. R. Civ. P. 56(e)(2) (setting forth how a court may "consider the fact undisputed for purposes of" a motion for summary judgment if a party "fails to properly address another party's assertion of a fact"); LCvR56.1(e) (explaining how "all material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant" (citation modified)).  Plaintiff failed to exhaust his administrative remedies, and "unexhausted claims cannot be brought in court," *Jones*, 549 U.S. at 211. *See also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). Accordingly, Defendants' affirmative defense bars Plaintiff's claims, and Defendants are entitled to summary judgment as a matter of law.[4]

---

[4] Defendants bring an additional argument in their Motion—that Plaintiff failed to state a claim. Doc. 34 at 4-5. However, because the undersigned recommends that the Court grant summary judgment to all Defendants based on Plaintiff's failure to exhaust ODOC's administrative remedies, the undersigned does not find it necessary to address the Motion's alternative argument. *See Estrada*, 107 F.4th at 1262 (noting "exhaustion is a precondition for bringing suit under the plain language of" the PLRA (citation modified)).

E.    **Summary judgment for unserved Defendant**

Defendant Pat LNU, Kitchen Supervisor, was not served and therefore has not responded to Plaintiff's Complaint.  *See* Doc. 22 (unexecuted summons on Defendant Pat LNU).  However, as Plaintiff failed to exhaust the administrative remedies for the claims he presents in this matter, the Court should enter judgment against him and in favor of all Defendants, including any defendant not served.  *See Smith v. Jones*, 606 F. App'x 899, 902 (10th Cir. 2015) ("Because Mr. Smith equally failed to exhaust his remedies as to all Defendants, the district court properly granted summary judgment based on non-exhaustion to even those Defendants who had not formally moved for it." (citation modified)); *see also Castleman v. Stitt*, No. CIV-23-919-PRW, 2024 WL 5161903, at *1 n.1, *7 (W.D. Okla. Aug. 27, 2024) (recommending the Court grant defendants' motion for summary judgment based on plaintiff's failure to exhaust, including against a defendant who had not been served) (R&R), *adopted*, 2024 WL 5161870 (W.D. Okla. Dec. 18, 2024).

V.    **Plaintiff's Additional Motions**

Plaintiff has filed two additional motions.  He filed a "Motion for Immediately Transfer" from the Oklahoma State Penitentiary based on alleged discrimination, cruel and unusual punishment, conspiracy, and denial of access to the law library since his transfer to that facility in March 2025.  Doc. 39.  Plaintiff also filed a "Motion for Trial," Doc. 40, in which he reiterates many of the allegations in his Complaint and response to Defendants' Motion.  Adoption of the undersigned's Report and Recommendation would moot Plaintiff's two motions.

## VI.    Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court treat Defendants' Motion as one for summary judgment, Doc. 34, and **GRANT** summary judgment to all Defendants.  Adoption of this recommendation would **MOOT** Plaintiff's motion to transfer, Doc. 39, and his motion for trial, Doc. 40.  The parties are advised of their right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objection must be filed with the Clerk of this Court not later than **August 21, 2026**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 31st day of July, 2026.

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE